IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:13-CV-59-D

EMILY J. LEWIS,                  )
                                    )
        Plaintiff,           )
                                      )
        v.               )        **MEMORANDUM AND**
                                    )        **RECOMMENDATION**
CAROLYN W. COLVIN,        )
Acting Commissioner of Social Security,      )
                                      )
        Defendant.        )

In this action, plaintiff Emily J. Lewis ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 24, 26). Both filed memoranda in support of their respective motions. (D.E. 25 (Pl.'s Mem.); D.E. 34 (Comm'er's Am. Mem.); D.E. 35 (Pl.'s Supp. Mem.)).[1] The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 6 Jan. 2014 Order (D.E. 28)). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] Pursuant to the court's 28 May 2014 order (D.E. 33), the Commissioner filed an amended memorandum due to deficiencies in her original memorandum (D.E. 27). As permitted by the court, plaintiff filed a supplemental memorandum (D.E. 35) in response to the Commissioner's amended memorandum.

# BACKGROUND

## I.     Case History

### A.     The ALJ's 2010 Decision

On 30 January 2008, plaintiff filed an application for SSI benefits alleging an onset of disability on 1 August 2000, which she later amended to 25 February 2008.  Transcript of Proceedings ("Tr.") 171.  On 19 April 2010, an ALJ issued a decision denying plaintiff's claims ("2010 decision").  Tr. 9, 171-93.  Plaintiff sought review of the decision by the Appeals Council. Tr. 9.

While the Appeals Council's review was pending, in May 2010, plaintiff filed a subsequent application for SSI benefits as well as an application for a period of disability and disability insurance benefits ("DIB") benefits ("2010 applications").  Tr. 461-69.

### B.     Remand by the Appeals Council

On 8 April 2011, the Appeals Council vacated the 2010 decision under the "substantial evidence" provision of the disability regulations ("Regulations") under the Social Security Act ("Act"), 20 C.F.R. § 416.1470.  Tr. 9, 195-98.  The Appeals Council remanded the case for the issuance of a new decision by an ALJ after he further considered the evidence, obtained supplemental evidence, and provided plaintiff with the opportunity for a hearing.  Tr. 9, 195-98. The Appeals Council also addressed plaintiff's pending 2010 applications, concluding that its "action with respect to the current claims renders the subsequent claims duplicate" and directing the ALJ to "associate the claim files and issue a new decision on the associated claims."  Tr. 197.

### C.     The ALJ's 2012 Decision

In response to the remand order, an ALJ, different from the one who issued the 2010 decision, held a supplemental hearing on 4 April 2012, at which plaintiff testified.  Tr. 32-72.

Because the vocational expert was not available for the supplemental hearing, the ALJ submitted interrogatories to her, and her responses (Tr. 706-13) were made part of the record. On 20 July 2012, the ALJ issued a decision dismissing plaintiff's DIB claim because she would no longer have disability insured status after amending the alleged onset date to 25 February 2008 (Tr. 10) and denying plaintiff's SSI claim ("2012 decision") (Tr. 9-21). Plaintiff timely requested review by the Appeals Council. Tr. 427-29. On 31 January 2013, the Appeals Council admitted an additional exhibit, namely, a letter from plaintiff's counsel (Tr. 427-29), but denied the request for review (Tr. 1-5). At that time, the 2012 decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 2 April 2013, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See In Forma Pauperis* Mot. (D.E. 1), Order Allowing Mot. (D.E. 5), Compl. (D.E. 6)).

## II.     Standards for Disability

The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Regulations provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(iv).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

4

## III.    Findings of the ALJ

Plaintiff was 41 years old on the alleged onset date of disability and 45 years old on the date of the supplemental hearing.  *See* Tr., *e.g.*, 20 ¶ 6.  She has at least a high school education and past relevant work as a cashier.  Tr. 19 ¶ 5; 20 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 25 February 2008, the alleged onset date.  Tr. 12 ¶ 1.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations, 20 C.F.R. § 416.920(c):  fibromyalgia, low back pain, degenerative disc disease of the cervical spine, degenerative joint disease of the shoulders, carpal tunnel syndrome, obesity, hypertension, arthritis, bilateral patella-femoral syndrome, major depression, personality disorder, and generalized anxiety disorder.  Tr. 12 ¶ 2.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listings. Tr. 13 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform less than the full range of sedentary work, which involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 416.967(a).[2] Tr. 14 ¶ 4.  The specific limitations in the RFC were as follows:

_____

[2] Section 416.967(a) provides in full:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a); *see also* DOT (U.S. Dep't of Labor 4th ed. rev. 1991), app. C § IV, def. of "S-Sedentary Work," http://www.oalj.dol.gov/ public/dot/references/dotappc htm (last visited 5 Aug. 2014).  "Sedentary work"

[F]requent, but not constant, use of both upper extremities for handling and fingering, as well as overhead reaching; occasional climbing [of] ramps and stairs, but no climbing [of] ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and/or crawling; must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; the individual is capable of performing simple, routine, repetitive tasks in a low stress work setting, which is further defined as no more than occasional decision-making or changes in the work setting; also, must have a job that is not production pace, rather a goal-oriented job; the individual is limited to frequent social interaction with supervisors and co-workers, but no work with the public, meaning the individual can have incidental contact with the public, but no work [with the public] as part of her job duties. The claimant also requires an at-will sit/stand option . . . .

Tr. 14 ¶ 4.

At step four, the ALJ found that plaintiff is unable to perform her past relevant work, which is at the light exertional level. Tr. 19 ¶ 5. At step five, the ALJ accepted the opinion of the vocational expert, citing the *Dictionary of Occupational Titles* ("DOT"), and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of escort vehicle driver, lens inserter, and addresser. Tr. 20 ¶ 9; 707, no. 7; 709, no. 12; 710, no. 13. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 21 ¶ 10.

## IV.    Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision

---

and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.967.

must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales,* 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## DISCUSSION

### I. Plaintiff's Contentions

Plaintiff contends that the ALJ: (1) failed to give adequate consideration to plaintiff's rheumatoid arthritis; (2) improperly evaluated the opinions of her treating nurse practitioner,

Sandra L. Krantz, FNP ("FNP Krantz"); (3) failed to describe the sit/stand option in her RFC with requisite specificity; and (4) erroneously found at step five that there was a significant number jobs in the national economy that plaintiff could perform. The court addresses each of these contentions in turn below.

## II.    The ALJ's Consideration of Plaintiff's Rheumatoid Arthritis

Plaintiff suffers from both osteoarthritis and rheumatoid arthritis. Although both share the name "arthritis," there are significant differences between the two. Osteoarthritis, which can also be referred to as degenerative joint disease and, with respect to the spine, degenerative disc disease, is characterized by erosion of joint cartilage; causes pain and loss of function; and affects mainly weight-bearing joints. *See Stedman's Medical Dictionary*, entry for "osteoarthritis" (27th ed. 2000); *Osteoarthritis*, Medline Plus, U.S. Nat'l Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/000423.htm (last visited 5 Aug. 2014). Rheumatoid arthritis is a long-term autoimmune disease that causes inflammation of joints and surrounding tissues and can affect other organs and body systems; causes pain and loss of function in joints, anemia, and other conditions; and affects primarily peripheral joints, such as the wrists, fingers, knees, feet, and ankles. *See Rheumatoid Arthritis*, Medline Plus, http://www.nlm.nih.gov/medlineplus/ency/article/000431.htm (last visited 5 Aug. 2014); *What is Rheumatoid Arthritis?*, National Institute of Arthritis and Musculoskeletal Disease, http://www.niams.nih.gov/Health_Info/Rheumatic_Disease/rheumatoid_arthritis_ff.asp (last visited 5 Aug. 2014); Listing 14.00D6 (description of inflammatory arthritis). The Commissioner does not appear to dispute that plaintiff's rheumatoid arthritis, as well as her osteoarthritis, imposes more than a minimal limitation on plaintiff's ability to perform basic

work activities and is therefore a severe impairment. *See* 20 C.F.R. § 416.920(c); *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984).

Plaintiff argues that the ALJ failed to give adequate consideration to plaintiff's rheumatoid arthritis in two respects: he did not find it to be a severe impairment at step two of the sequential analysis and did not consider its effects in his RFC assessment. The court disagrees.

At step two, the ALJ expressly found plaintiff's "arthritis" to be a severe impairment. Tr. 12 ¶ 2. If "arthritis" encompasses rheumatoid arthritis, the ALJ did find plaintiff's rheumatoid arthritis to be a severe impairment. Plaintiff argues that "arthritis" signifies only osteoarthritis, but the contention is unconvincing.

Among other reasons, plaintiff's interpretation is contrary to a plain reading of the term. *See Hess v. Colvin*, No. 2:13–cv–394, 2014 WL 2601749, at *10 ("In the first instance, this is not what the ALJ said, and words should be given their intended, ordinary meaning."), *rep. and recommendation adopted by* 2014 WL 2601749, at *1 (E.D. Va. 6 June 2014); *Sawyer v. Colvin*, ___ F. Supp. 2d ___, No. 1:12–2364–TMC, 2014 WL 408992, at *10 ("The plain meaning of the ALJ's finding was that Plaintiff had previously suffered a sacral fracture and the records support this finding."), *rep. and recommendation adopted by* 2014 WL 408992, at *1-2 (D.S.C. 3 Feb. 2014). Absent specification of one type of arthritis or another, a natural reading of "arthritis" is that it refers to arthritis generally, irrespective of particular types.

The ALJ did make express reference in his severity determination to osteoarthritis, identifying degenerative disc disease of the cervical spine and degenerative joint disease of the shoulders as severe impairments. Tr. 12 ¶ 2. If anything, this listing of specific types of

osteoarthritis would tend to suggest that "arthritis" in the severity determination refers to other types of arthritis.

Moreover, the medical records themselves use varying terms to refer to plaintiff's arthritis. *See* Tr., *e.g.*, 733, 735, 819 ("polyarthritis"); 734, 825 ("total body arthritis"), 740 ("simple arthritis"); 931 ("osteoarthritis"); 932, 974 ("arthritis"); 1035, 1038, 1050, 1053, 1097 ("rheumatoid arthritis"); 1146 ("arthropathy[3] NOS, shoulder"); 1228 ("pain in joint, shoulder," "discussed osteoarthritis"); 756, 849 ("degenerative joint disease of the knees and the lower back"); 794, 808 (possible "degenerative disk disease"); 839, 890 ("[d]egenerative joint disease of both knees with lower back discomfort and muscle spasms"); 971 ("mild degenerative changes of the AC joint, otherwise, unremarkable, and the cervical spine films show degenerative disc disease with foraminal narrowing at C5 and C6"). It would be reasonable for the ALJ to use the broad term "arthritis" to encompass such varied terminology, rather than setting out in the severity determination specific terms used in each instance (as advantageous as greater specificity would have been here in retrospect).

Plaintiff argues that the differences between rheumatoid arthritis and osteoarthritis show that "arthritis" in the ALJ's severity determination signified solely osteoarthritis. But she offers no explanation why that should be the case. Nor does she explain why, based on this rationale, "arthritis" could not just as easily be interpreted to refer solely to rheumatoid arthritis.

A nonrestrictive interpretation of "arthritis" is reinforced by review of the ALJ's RFC analysis which, contrary to plaintiff's contention, shows that the ALJ did consider plaintiff's rheumatoid arthritis. It is appropriate to take into account the ALJ's consideration of plaintiff's rheumatoid arthritis after step two in evaluating his step two determination because the decision

---

[3] The term "arthropathy" refers, generally, to "any diseases affecting a joint." *Stedman's Medical Dictionary*, entry for "arthropathy" (27th ed. 2000).

should be read as a whole. *See, e.g., Manning v. Colvin*, No. 4:12–CV–204–D, 2013 WL 2617351, at *6 (collecting cases), *mem. and recommendation adopted by* 2013 WL 2617351, at *1 (E.D.N.C. 11 June 2013). Such consideration of plaintiff's rheumatoid arthritis after step two would render harmless the ALJ's failure to find it severe even it that had occurred. *See, e.g., Prince v. Colvin,* No. 5:11–CV–763–FL, 2013 WL 1786634, at *2 (E.D.N.C. 25 Apr. 2013); *Pittman v. Astrue*, No. 5:08–CV–83–FL, 2008 WL 4594574, at *4 (E.D.N.C. 10 Oct. 2008).

The ALJ's consideration of plaintiff's rheumatoid arthritis after step two is shown, in part, by his repeated citation to exhibits containing medical records in which rheumatoid arthritis is the only "arthritis" referenced. *See* Ex. 33F (cited at Tr. 16 ¶ 4) (containing Tr. 1033, 1035, 1037, 1038, 1046, 1047, 1050, 1051, 1052, 1053, 1072, 1073, 1074, 1075); Ex. 35F (cited at Tr. 12 ¶ 2; 16-18 ¶ 4) (containing Tr. 1097, 1104, 1131). The ALJ discussed the 31 August 2011 office visit which is the subject of one set of these records (Tr. 1037-39). Tr. 16 ¶ 4.

The ALJ also expressly mentions rheumatoid arthritis in his decision, albeit only once and in the context of a medical record ruling it out at the time (5 Mar. 2009). Tr. 15 ¶ 4; 932, 933, 935; *see also* Tr. 931 (note on 5 Apr. 2009 follow-up to 5 Mar. 2009 visit). But the ALJ's express discussion of either type of arthritis is scant. Further, the administrative record in this case spans over 1,200 pages, and plaintiff was found to have 11 severe impairments. The ALJ is not obligated to discuss every piece of evidence. *See, e.g.*, *Doyle v. Colvin*, No. 7:12–CV–326–FL, 2014 WL 269027, at *10, *mem. and recommendation adopted by* 2014 WL 269027, at *1 (E.D.N.C. 23 Jan. 2014). In addition, the ALJ repeatedly represented that he considered all the evidence of record. *See* Tr. 10 ("After careful consideration of all the evidence . . . ."); 14 ¶ 4 ("After careful consideration of the entire record . . . ."); 15 ¶ 4 ("After careful consideration of the evidence . . . ."); 17 ¶ 4 ("[B]ased on . . . the evidence of record . . . ."); 19 ¶ 4 ("[T]he totality

of the evidence demonstrates . . . ."). Therefore, the degree to which the ALJ discussed arthritis of any type is not necessarily a good indication of the extent to which he considered it.

Notably, the ALJ addressed directly symptoms associated with her rheumatoid arthritis, such as pain (Tr. 14-17 ¶ 4); joint stiffness and/or swelling (Tr. 16 ¶ 4; 18 ¶ 4); finger pain and weak grip (Tr. 14 ¶ 4; 15 ¶ 4;19 ¶ 4); and restrictions on reaching (Tr. 14 ¶ 4; 19 ¶ 4). The ALJ also included in his RFC determination limitations consistent with plaintiff's rheumatoid arthritis impairment. These include: restriction to work at the sedentary level; "frequent, but not constant, use of both upper extremities for handling and fingering, as well as overhead reaching; occasional climbing [of] ramps and stairs, but no climbing [of] ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and/or crawling; [and] . . . avoid[ing] concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights." Tr. 14 ¶ 4.

The diagnosis of a condition alone is not the focus in a disability determination case, but rather the limitations the diagnosed condition imposes on the claimant's functional abilities. *See Smith v. Colvin*, No. 4:12–CV–237–D, 2013 WL 6247216, at *7 n.6 (E.D.N.C. 11 Oct. 2013), *mem. and recommendation adopted by* 2013 WL 6178584, at *1 (25 Nov. 2013); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . . says nothing about the severity of the condition."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"). Plaintiff has not shown that there are limitations on plaintiff resulting from rheumatoid arthritis that the ALJ did not address or that are not accommodated in the RFC determination.

Plaintiff's challenge to the ALJ's consideration of her rheumatoid arthritis is therefore meritless. It should accordingly be rejected.

## III.    The ALJ's Evaluation of FNP Krantz's Opinions

According to medical records in the administrative transcript, FNP Krantz treated plaintiff with varying frequency from 30 April 2008 until 20 December 2011 at Goshen Medical Center, Inc. ("Goshen"). *See* Tr., *e.g.*, 967, 1105; *cf.* Tr. 55 (plaintiff's supplemental hearing testimony that she was still receiving treatment there). FNP Krantz completed a 25-item questionnaire on plaintiff's physical abilities and limitations dated 19 April 2011 (Tr. 1028).[4] In the questionnaire, she found plaintiff unable to work any hours per day. (Tr. 1028, no. 1). While a number of the specific limitations FNP Krantz found plaintiff to have match those in the ALJ's RFC determination, she found plaintiff more limited with respect to other specific areas. As to manipulation, for example, while the ALJ found plaintiff limited to frequent handling, fingering, and overhead reaching with both upper extremities, FNP Krantz opined that plaintiff was capable of no fine manipulation with the right hand and only occasional fine manipulation with the left hand (Tr. 1028, nos. 11, 12); gross manipulation with both hands only occasionally (Tr. 1028, nos. 13, 14); and no raising of the right arm over the shoulder (Tr. 1028, no. 16) (but frequent raising of the left arm over the shoulder (Tr. 1028, no. 15)). Among her other findings was that plaintiff needed to elevate her legs frequently during an eight-hour workday (Tr. 1028, no. 24), whereas the ALJ imposed no such limitation. The questionnaire did not specify the period to which it applies, and it therefore presumably relates to plaintiff's condition around the time it is dated.

---

[4] FNP Krantz also completed a similar questionnaire dated 22 January 2010 (Tr. 1007), but plaintiff does not assert a challenge to the ALJ's decision with respect to it.

The ALJ gave "little weight" to FNP Krantz's opinions.[5]  Plaintiff contends that the ALJ erred in doing so.  The court finds no error.

The same factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other so-called "acceptable medical sources") apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"), such as nurse practitioners.  *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *4 (9 Aug. 2006); *see also* 20 C.F.R. § 416.927(c) (evaluation of opinion evidence); § 416.913(d)(1) (including nurse practitioners among "other sources").  The factors to be considered include the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record.  20 C.F.R. § 416.927(c)(2)-(6).  As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given.  *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6 ("[The ALJ] generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013) ("[T]he ALJ is required to 'explain in the decision the weight given to . . . any opinions from treating sources, non-treating sources, and other non-examination sources who do not work for the [the Social Security Administration].").

The opinions of other sources on issues reserved to the Commissioner, that is, legal conclusions, are not entitled to special weight because of their source, including statements that the claimant is disabled or unable to work.  20 C.F.R. § 416.927(d)(1), (3).  But these opinions

---

[5] Although both plaintiff and the ALJ refer to this questionnaire as having been completed by both FNP Krantz and Allyn Danbeck, M.D., a physician at Goshen, the questionnaire is signed by only FNP Krantz and Dr. Danbeck's name does not otherwise appear on it.

must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 (2 July 1996).

Here, as required, the ALJ explained his determination to accord FNP Krantz's opinions little weight. He stated:

> Little weight was also given to the opinions of nurse practitioner, Sandra Krantz . . . (Exhibits 28F and 31F) from Goshen, because it is inconsistent with the record, which shows that the claimant conditions have improved with no joint swelling and only mild lumbar tenderness. In addition, the record shows that the claimant's fibromyalgia and hypertension are well controlled with medication (Exhibit 35F).

Tr. 18 ¶ 4.

Substantial evidence supports the ALJ's explanation; it is not based on so-called "cherry picking," as plaintiff contends. For example, in the note on her 20 September 2011 visit with plaintiff, FNP Krantz stated:

> Emily [*i.e.*, plaintiff] is doing well. She still has pain with palpation, but she moves about easier, walks without limping, and lacks the joint swelling she had, especially in her ankles and wrists. She is much improved in function. She is even helping baby sit a 1 year old.

Tr. 1102. This medical record is included in the exhibit, Exhibit 35F, the ALJ cites in support of his findings regarding FNP Krantz's opinions (and discusses elsewhere in his decision).[6]

Similarly, in the report on his visit with plaintiff on 20 February 2012, Goshen physician Michael C. Milliken, M.D., found in his inspection and palpation of plaintiff's musculoskeletal system that she had mild and generalized tenderness. Tr. 1108. His examination of the lumbar spine revealed "no swelling, edema or erythema [*i.e.*, abnormal redness] of surrounding tissue and normal lumbosacral spine movements." Tr. 1108. With respect to plaintiff's fibromyalgia, he stated: "No acute issues. Sx [*i.e.*, symptoms] well controlled. Continue current regimen."

---

[6] Although in a 21 December 2011 visit FNP Krantz noted various musculoskeletal problems plaintiff was having (Tr. 1105), these findings are identical to those FNP Krantz made in the note on her 20 September 2011 visit with plaintiff (Tr. 1101), in which, as discussed, she found plaintiff was doing well (Tr. 1102).

Tr. 1109. He made similar findings regarding plaintiff's hypertension. Tr. 1109. Dr. Milliken's report is also included in Exhibit 35F, cited by the ALJ in his discussion of FNP Krantz's opinions.

Other supportive evidence includes a note dated 1 December 2011 by physician's assistant J.W. Bass, PA-C, to rheumatologist Suneya G. Hogarty, M.D., both of Wayne Heart & Internal Medicine Associates, PA. Tr. 1032. Plaintiff received treatment there documented in the administrative record from 21 April 2011 to 5 December 2011. *See* Tr., *e.g.*, 1031, 1058; *cf.* Tr. 55 (plaintiff's supplemental hearing testimony that she was still receiving treatment there). The note states in relevant part: "a few months ago I placed her on triple therapy, overall she feels 50% better than when she first came." Tr. 1032. As a further example, at the supplemental hearing, plaintiff testified that injections she was receiving for her arthritis were helping with her stiffness. Tr. 45-46.

Plaintiff cites to the principle that "[i]f a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *1 ¶ 6 (2 July 1996); *see also* 20 C.F.R. § 416.927(c)(2). But that principle is inapposite because it applies only to physicians, psychologists, and other acceptable medical sources and not to other sources, such as FNP Krantz. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2. Moreover, the opinions reflected in the questionnaire were unsupported by any clinical or laboratory findings, tending to further undermine the weight to which they would be entitled. *See* 20 C.F.R. § 416.927(c)(3). Some courts discount generally the weight to be accorded opinions reflected in check-off forms like the questionnaire of FNP Krantz because of their cursory nature. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Mason v. Shalala*, 994

F.2d 1058, 1065 (3d Cir. 1993); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1993). And, of course, the opinion expressed by FNP Krantz that plaintiff could not work any hours a day is not entitled to special weight based on its source because it amounts to a determination on the legal issue reserved to the Commissioner of whether plaintiff is disabled. *See* 20 C.F.R. § 416.927(d)(1), (3).

Not surprisingly, given the extensive record in this case, plaintiff cites to evidence in the record she contends supports opinions reflected in FNP Krantz's questionnaire. Needless to say, it is the ALJ's responsibility to reconcile inconsistencies in the evidence. *See, e.g.*, *Goodwin v. Halter*, 140 F. Supp. 2d 602, 605 (W.D.N.C. 2001). Moreover, in carrying out this function, as noted previously, the ALJ is not required to discuss every piece of evidence. The ALJ therefore did not err in choosing not to distinguish comprehensively evidence purportedly supportive of the opinions in the questionnaire.

In any event, evidence cited by plaintiff is not in all respects supportive of FNP Krantz's opinions. Some of it is remote in time from the questionnaire and therefore seemingly of limited relevance to it. *See* Tr., *e.g.*, 932 (Mar. 2009), 971 (Sept. 2009), 975 (May 2009), 1153 (Jan. 2010), 1186 (May 2009) (all cited in Pl.'s Mem. 11).

As a further example, plaintiff cites to the report of Dr. Hogary on her 23 June 2011 visit with plaintiff. *See* Tr. 1046. While Dr. Hogarty noted that plaintiff's legs were swollen and that she had pain in her hands and shoulders, having been out of pain pills for a week, she also noted that:

> pain is overall improved. function has improved. hip is not bothering like before. can move arm better. AM stiffness lasting about 10min until she gets in shower.

Tr. 1046.

Plaintiff also cites to the report of consulting state agency physician Mouhamed Fakhri, M.D., on his 26 June 2009 examination of plaintiff. *See* Tr. 904. This evidence, of course, suffers from remoteness in time from FNP Krantz's questionnaire—almost two years earlier. It is true that Dr. Fakhri made some positive findings: that plaintiff had weakened grip strength (4/5) in and the inability to "sprain" her fingers normally with her right hand, and tenderness in her wrists. Tr. 904. But he also found that the "[r]est of her joints [were] fine with no deformity, swelling, or erythema [and] full range of motion in all of them," albeit with difficulty in the case of her spine. Tr. 904.

Notably, plaintiff does not challenge the ALJ's determination that her allegations concerning the intensity, persistence, and limiting effect of her impairments are not fully credible. *See* Tr. 15 ¶ 4. Nevertheless, it is apparent that the ALJ did not completely discount the limitations she alleges or about which FNP Krantz opined in her questionnaire. As noted, the ALJ's RFC determination contains restrictions responsive to these alleged limitations, including restriction to work at the sedentary level; "frequent, but not constant, use of both upper extremities for handling and fingering, as well as overhead reaching; occasional climbing [of] ramps and stairs, but no climbing [of] ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and/or crawling; [and] . . . avoid[ing] concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights." Tr. 14 ¶ 4. Indeed, as noted, the ALJ's RFC determination essentially matches FNP Krantz's opinions in numerous areas: the limitation to sedentary work, only occasional bending and stooping, and frequent overhead reaching with the left arm; and inclusion of an at-will sit/stand option.[7] *Compare* Tr. 14 ¶ 4 *with* Tr. 1028, nos. 2, 4, 6-9, 15.

---

[7] Regarding the sit/stand option, the court refers to FNP Krantz's opinions that plaintiff could stand 15 minutes at one time and sit 30 minutes at one time (Tr. 1028, nos. 2, 4). FNP Krantz also opined that plaintiff could stand or sit

For this and the other reasons discussed, the court finds plaintiff's challenge to the ALJ's handling of FNP Krantz's opinions to be without merit. This challenge should accordingly be rejected.

## IV. Specificity of the Sit/Stand Option

In his RFC determination, as noted, the ALJ specified that plaintiff required an "at-will sit/stand option." Tr. 14 ¶ 4. Plaintiff argues that the ALJ erred by not stating the frequency of plaintiff's need to alternate between sitting and standing. She cites to Soc. Sec. Ruling 96-9p, which provides that an RFC for less than the full range of sedentary work, as here, "must be specific as to the frequency of the individual's need to alternate sitting and standing." Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *7 (2 July 1996).

This court has held that the at-will sit/stand option satisfies the frequency requirement of Soc. Sec. Ruling 96-9p. *See Brooks v. Astrue*, No. 10-cv-37-D, 2011 WL 3882283, at *10 (E.D.N.C. 17 Aug. 2011), *mem. and recommendation adopted by* 2011 WL 3904104 (2 Sept. 2011); *see also Hedspeth v. Astrue*, No. 11-CV-38-FL, 2012 WL 4017953, at *5, (E.D.N.C. 12 Sept. 2012) (holding that an "at-will" limitation is sufficient to satisfy the frequency requirement for a sit/stand option although Soc. Sec. Ruling 96-9p was inapplicable); *cf. Thompson v. Astrue*, 442 Fed. Appx. 804, 807 (4th Cir. 2011) (holding that where Soc. Sec. Ruling 96-9p was inapplicable, "[t]he ALJ's RFC finding and hypothetical were consistent with an at-will sit-stand option, and we find that no greater specificity was required here"). Other courts have reached the same and similar conclusions. *See Jimison v. Colvin*, 513 Fed. Appx. 789, 792 (10th Cir.

---

"None" in a workday (Tr. 1028, nos. 3, 4). This contradictory opinion does not appear explicable simply as an expression of FNP Krantz's view that plaintiff could not work since she responded affirmatively to the inquiry in the questionnaire regarding leg elevation during the workday (Tr. 1028, no. 24). Such internal inconsistencies detract from the weight properly accorded a medical source opinion. *See, e.g., Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995); *Clay v. Astrue*, No. 08–25, 2009 WL 62261, at *21 (N.D.W. Va. 2009); *Peck v. Astrue*, C.A. No. 5:10–2625–MBS–KDW, 2012 WL 967090, at *11 (D.S.C. 20 Mar. 2012).

2013) (ruling that the frequency requirement in Soc. Sec. Ruling 96-9p was satisfied by the inclusion of an "at-will" sit/stand option); *see also Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008) (holding requirement that claimant had "to have a sit, stand option where he could sit or stand as needed during the day" was sufficiently specific).  Indeed, an at-will option gives a claimant broad flexibility in alternating between sitting and standing, and is arguably more erosive of the occupational base than an option providing a set interval.  *See Ketelboeter*, 550 F.3d at 626.  The vocational expert here confirmed that the occupations she identified as available to plaintiff "allow for a 'sit-stand' option at will during a typical 8-hr. workday."  Tr. 709-10.

The court concludes that plaintiff's challenge to the specificity of the sit/stand option in the RFC determination is baseless.  It should accordingly be rejected.

## V.     The ALJ's Determination at Step Five

Plaintiff argues that her RFC precludes her from performing two of the occupations that ALJ found at step five that she could perform—escort vehicle driver and lens inserter—and that the number of jobs available in the other occupation—addresser—is legally insufficient.  The court finds no error requiring remand of this case.

The occupation of escort vehicle driver involves driving an escort vehicle for trucks hauling mobile homes.  *See* DOT #919.663-022.  The DOT definition provides:

> Drives vehicle equipped with warning lights and signs to escort trucks hauling mobile homes on public thoroughfares: Precedes escort and maintains specified distance between pilot vehicle and escort to provide warning to other motorists and to clear traffic at locations. Communicates by two-way radio with truck and other pilot vehicle drivers to coordinate changes in speed and route, emergencies, or traffic congestion.

DOT #919.663-022.  The vocational expert found expressly that this occupation allows for the at-will sit/stand option.  Tr. 710, no. 13.

Plaintiff contends, though, that the at-will sit/stand option in the RFC determination makes it impossible for her to perform this work because it permits her, as she deems it necessary, to pull off the road and stand up irrespective of the extent to which doing so would impede the safe and efficient transport of the load being hauled. The court finds plaintiff's concern plausible. Without an explanation as to why the at-will option does not preclude the escort driver occupation, the court cannot say that the ALJ's determination that plaintiff could perform it is supported by substantial evidence. Therefore, standing alone, this deficiency would require remand.

The court has similar concerns with respect to the lens inserter occupation. As described in the DOT, it appears to entail production-pace work:

> Fits lenses into plastic sunglass frames and places frames *on conveyor belt* that passes under heat lamps which soften frames preparatory to setting of lenses.

DOT #713.687-026 (emphasis added). But the RFC determination requires "a job that is not production pace." Tr. 14 ¶ 4. While the vocational expert stated that the lens inserter occupation was consistent with ALJ's RFC determination (Tr. 707, no. 7; 709, no. 12), the court cannot say that the ALJ's determination that plaintiff could perform it is supported by substantial evidence in the absence of an explanation.

The court finds no error, however, with respect to the ALJ's finding that plaintiff could perform the occupation of addresser (DOT #209.587-010).[8] The ALJ found, based on the vocational expert's opinion, that there are 1,100 such jobs in North Carolina and 101,000 such jobs nationally. Tr. 20 ¶ 9; 709. Plaintiff contends that this is an insufficient number to satisfy

---

[8] The DOT describes the addresser occupation as follows:

> Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail.

DOT #209.587-010.

the government's burden at step five of showing that a significant number of jobs is available to a claimant nationally. But the Fourth Circuit has held that a far lower number of jobs is significant for purposes of the step five analysis. *See, e.g., Hodges v. Apfel*, 203 F.3d 820 (Table), at *1 (4th Cir. 2000) (153 jobs); *Hyatt v. Apfel*, 153 F.3d 720 (Table), at *3 (4th Cir. 1998) (650 jobs); *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (110 jobs).

The vocational expert's opinion on the number of addresser jobs available belies plaintiff's related contention that automated mailing has rendered the addresser occupation obsolete, as does the very recognition of that occupation in the DOT, upon which the Regulations expressly permit an ALJ to rely. *See* 20 C.F.R. § 416.966(d)(1). This court has previously affirmed decisions in which the ALJ found the burden at step five satisfied, at least in part, on the basis of the availability of jobs in the addresser occupation. *See, e.g., Jones v. Colvin*, No. 12-CV-567-FL, 2013 WL 5460197, at *18, *mem. and recommendation adopted by* 2013 WL 5460197, at *6 (E.D.N.C. 30 Sept. 2013); *Nelson v. Colvin*, No. 12-CV-97-FL, 2013 WL 4504269, at *4, *mem. and recommendation adopted by* 2013 WL 4504269, at *1 (E.D.N.C. 22 Aug. 2013).

The court concludes that the ALJ's determination at step five that there are a significant number of jobs available to plaintiff nationally, based on the availability of jobs in the addresser occupation, was proper. Plaintiff's challenge to the ALJ's step five determination should accordingly be rejected.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion (D.E. 26) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 24) for judgment be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 19 August 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 5th day of August 2014.

James E. Gates
United States Magistrate Judge